Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| WIDALBERT ORTIZ PÉREZ<br><br>Demandante-Peticionario<br><br>v.<br><br>JUDITH GONZÁLEZ LÓPEZ<br><br>Demandada-Recurrida | TA2025CE00299 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Utuado<br><br>Caso núm.: UT2020RF00039<br><br>Sobre: Relaciones Filiales |
| JUDITH GONZÁLEZ LÓPEZ<br><br>Demandante-Recurrida<br><br>v.<br><br>WIDALBERT ORTIZ PÉREZ<br><br>Demandado-Peticionario | | Caso núm. UT2021RF00362<br><br>Sobre: Alimentos |

Panel integrado por su presidente el juez Hernández Sánchez, el juez Rivera Torres y el juez Marrero Guerrero

**Rivera Torres, Juez Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 12 de septiembre de 2025.

Comparece ante este tribunal apelativo, el Sr. Widalbert Ortiz Pérez (señor Ortiz Pérez o el peticionario) mediante el recurso de *Certiorari* de epígrafe solicitándonos la revisión de la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Utuado (TPI), el 21 de mayo de 2025, notificada al día siguiente. Mediante este dictamen, el foro primario acogió el *Informe y Recomendación en Cuanto a Retroactivo* del Examinador de Pensiones Alimentarias (Examinador) y, en consecuencia, estableció un plan de pago a razón de $291.94 mensuales.

Por los fundamentos que expondremos a continuación, determinamos denegar el recurso de *certiorari* solicitado.

## I.

El 18 de febrero de 2020, el señor Ortiz Pérez presentó una *Petición de Fijación de Relaciones Paterno Filiales.*[1] En esencia, solicitó al tribunal relacionarse con sus hijas W.A.O.G y A.K.O.G. Sostuvo que desde la ruptura de su relación con la Sra. Judith González López (señora González López o recurrida) no podía relacionarse con las menores, puesto que no existía un decreto de relaciones paterno filiales fijadas por el Tribunal. Además, arguyó que tenía lazos afectivos con las menores y que estas le manifestaban su deseo de compartir con él.

Tras varios trámites procesales, los cuales no son necesarios pormenorizar, el 1 de mayo de 2024, se celebró una vista de fijación de pensión alimentaria final. A base de lo ocurrido en dicha vista y de las recomendaciones del Examinador en su *Informe*, el 6 de mayo de 2024, el TPI emitió una *Sentencia* que se notificó el 9 de mayo de 2024.[2] En esta, acogió las determinaciones del Examinador y ordenó lo siguiente:

[…]

2. Se ordena al Sr. Widalbert Ortiz Pérez a proveer una pensión alimentaria de $450.00 mensuales a beneficio de las menores alimentistas, quienes residen bajo la custodia de la señora González López. La cantidad fijada fue estipulada por las partes.

3. La pensión que aquí se establece es efectiva desde el 27 de abril de 2021. La misma se proveerá a través de la ASUME.

4. El Sr. Widalbert Ortiz Pérez responderá de un 50% de los gastos escolares y de los gastos médicos no cubiertos por el plan médico, previa presentación de facturas en el término de 15 días, luego de lo cual tendrá 15 días para el pago. Cualquier artículo que tenga un valor mayor de $150.00 deberá ser consultado con la otra parte con patria potestad.

5. Las menores deberán permanecer inscritas en el plan de salud del gobierno de Puerto Rico.

---

[1] *Véase*, Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA) a la Entrada Núm. 1.
[2] *Véase*, SUMAC TA, Anejo II, págs. 1-3.

6. En cuanto al asunto del retroactivo, se concede 20 días a las partes para que presenten moción conjunta con la evidencia de los pagos realizados por el señor Ortiz Pérez y los términos del cálculo al respecto.

7. Se fijan honorarios de abogado en la cantidad de $1,000.00, a ser satisfechos por el alimentante en o antes de 60 días, a favor de la parte alimentista.

8. [...]

9. La orden de alimentos deberá ser registrada en el Estado de residencia del señor Ortiz Pérez.

10. Se ordena a las partes a que comparezcan, en el término de 15 días a partir de la fecha en la que hayan recibido esta determinación, a la oficina de ASUME más cercana a su residencia para abrir un caso ante la referida agencia.

11. Se les advierte a las partes que tienen la responsabilidad de informar al Tribunal y a la ASUME cualquier cambio de dirección, lugar de empleo, salario o cambios en seguro de cubierta médica, dentro de los 10 días de haber ocurrido dicho cambio.

12. La pensión alimentaria, aquí ordenada, regirá entre las partes hasta que este Tribunal o la ASUME realice una nueva determinación.

13. Se apercibe a las partes de que tienen derecho a solicitar la revisión de la pensión fijada transcurridos tres (3) años a partir de la fecha en que la misma fue establecida o modificada, o antes del periodo de tres años cuando ocurran cambios significativos en las circunstancias de alguna de las partes o de las menores alimentistas.

14. Se le advierte a la persona no custodia que, de no cumplir con el pago de la pensión alimentaria aquí dispuesta, a petición de parte, podrá ser encontrado incurso en desacato y ordenarse su arresto sin más citarle ni oírle.

15. Se apercibe al señor Ortiz Pérez de que la pensión alimentaria fijada devenga el interés legal prevaleciente por mora desde el momento en que deba ser satisfecha, conforme el Art. 147 del Código Civil, 31 LPRA sec. 566, y que el incumplimiento con la misma dará base a declararlo incurso en desacato.

16. Se remite esta Sentencia a la ASUME para que proceda a registrar la orden de pensión alimentaria en el Registro Estatal de Casos de Pensiones Alimentarias.

Así las cosas, el 14 de noviembre de 2024, la señora González

López presentó una *Moción de Desacato y Solicitando se Ordene el*

*Pago de Retroactivo.*[3] En esencia, esbozó que el señor Ortiz Pérez incumplió con el pago de la pensión alimentaria, adeudando la cantidad de $900 de pensión alimentaria corriente, correspondientes a los meses de julio y agosto de 2024. Resaltó que se comunicó con el representante legal del peticionario para solucionar la controversia relacionada al incumplimiento con la pensión alimentaria, el retroactivo de la deuda y la deuda por gastos escolares y médicos. Sin embargo, no obtuvo respuesta. Por todo lo anterior, solicitó al Tribunal que ordenara al señor Ortiz Pérez a pagar el retroactivo adeudado de $10,510, la totalidad de la pensión alimentaria correspondiente a los meses de julio y agosto de 2024, y el reembolso de gastos escolares de agosto 2024, en un término no mayor de cinco (5) días. A su vez, solicitó que se le impusiera $500 adicionales en honorarios de abogado.

En la misma fecha, el TPI emitió una *Orden,* que se notificó el mismo día, concediéndole veinte (20) días al peticionario para que presentara su posición.[4] No obstante, el 5 de diciembre de 2024, el señor Ortiz Pérez presentó una *Moción Solicitando Extensión De Término,* en la cual solicitó un término adicional de veinte (20) días para presentar su oposición.[5] Según solicitado, el 6 de diciembre de 2024, el foro primario emitió una *Orden* que se notificó el mismo día.[6] Mediante esta, declaró Ha Lugar la solicitud de prórroga y concedió el término adicional de veinte (20) días.

Posteriormente, el 14 de mayo de 2025, la recurrida presentó *Moción Para Que Se Emita Resolución Estableciendo El Retroactivo De La Deuda Por Pensión Alimentaria.*[7] Manifestó que el Tribunal

---

[3] A continuación, resumimos los hechos pertinentes para la disposición del recurso, los cuales surgen del expediente ante nuestra consideración y del Sistema Unificado de Manejo y Administración de Casos (SUMAC) del Tribunal de Primera Instancia. Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI), Entrada núm. 186.

[4] Véase, el SUMAC TPI, Entrada núm. 187.

[5] Véase, el SUMAC TPI, Entrada núm. 188.

[6] Véase, el SUMAC TPI, Entrada núm. 189

[7] Véase, el SUMAC TPI, Entrada núm. 197.

otorgó veinte (20) días adicionales, al término inicial, para que el peticionario presentara posición respecto a la deuda de retroactivo. Sostuvo que el término para presentar su oposición venció el 26 de diciembre de 2024, por lo que procedía ordenar el pago de retroactivo. Finalmente, solicitó se le impusiera una cantidad no menor de $500 adicionales en honorarios de abogados por su reiterada temeridad en incumplir con las órdenes del Tribunal.

Cónsono con lo anterior, el 19 de mayo de 2025, el TPI emitió una *Orden* en la cual refirió el caso a la Examinadora de Pensiones Alimentarias, a los fines de que presentara un informe con sus recomendaciones.[8] Conforme ordenado, el 20 de mayo de 2025, el Examinador emitió su *Informe y Recomendación en Cuanto a Retroactivo*.[9] En vista de lo anterior, el Examinador calculó que la deuda de retroactivo era de $10,510, correspondiente al periodo del 27 de abril de 2021 a mayo 2024. A su vez, recomendó establecer un plan de pago a treinta y seis (36) meses a razón de $291.94 mensuales, a partir del mes de junio de 2025.

Luego de examinar el argumento de la señora González López y el *Informe* del Examinador, el 21 de mayo de 2025, el TPI emitió su *Resolución,* que se notificó al día siguiente, en la cual acogió el *Informe* del Examinador.[10] En lo pertinente, determinó que la deuda de retroactivo era de $10,510, correspondiente al periodo del 27 de abril de 2021 a mayo 2024. Por tanto, indicó que el señor Ortiz Pérez, progenitor de las menores, debía pagar dicha cantidad adeudada mediante un plan de pago a treinta y seis (36) meses a razón de $291.94 mensuales, a partir del mes de junio de 2025. Respecto a los pagos de pensión alimentaria correspondientes a los meses de julio y agosto de 2024, así como los gastos escolares,

---

[8] Véase, el SUMAC TPI, Entrada núm. 198.
[9] Véase, el SUMAC TPI, Entrada núm.199.
[10] Véase, el SUMAC TPI, Entrada núm. 200.

médicos y extracurriculares, resolvió que el peticionario debía expresar su posición dentro del término de veinte (20) días.

Inconforme, el 23 de mayo de 2025, el peticionario presentó su *Moción Solicitando Revisión del Plan de Pago de Retroactivo Para Garantizar la Protección de la Reserva de Ingresos.*[11] Mediante esta adujo que, en la vista celebrada el 1 de mayo de 2024, el Examinador le imputó un ingreso de mensual de $1,160.53. Además, reconoció una reserva de ingreso de $615 mensuales. Por tanto, razonó que pagar el retroactivo de $291.36 mensuales afectaba directa e indebidamente su reserva protegida. Enfatizó que el Artículo 14 del Reglamento Núm. 9535-2024, intitulado *Guías Mandatorias Para Fijar y Modificar Pensiones Alimentarias en Puerto Rico,* págs. 18-19 (Reglamento Núm. 9535-2024), requería que los juzgadores consideraran el ingreso neto de reserva mensual para evitar cargas desproporcionadas que afectaran la autosuficiencia del alimentante. Por ello, reiteró que el pago de pensión de $450 mensuales más el pago de retroactivo $291.94 sumaba $741.94 mensuales, lo cual excedía el margen de reserva. Añadió que el pago de retroactivo generaba una obligación económica insostenible. En virtud de lo anterior, solicitó un nuevo plan de pago de retroactivo limitado a $95.53 mensuales, el cual respetara íntegramente la reserva de ingreso de $615.

El 14 de julio de 2025, el TPI emitió una *Resolución,* que se notificó al día siguiente, declarando No Ha Lugar la *Moción Solicitando Revisión del Plan de Pago de Retroactivo Para Garantizar la Protección de la Reserva de Ingresos.*[12] Además, le impuso la suma de $400 por concepto de honorarios de abogados. Específicamente, el Tribunal determinó que el ajuste permitido por las Guías Mandatorias con relación a la reserva, únicamente se refería a la

---

[11] Véase, el SUMAC TPI, Entrada núm. 201.
[12] Véase, el SUMAC TPI, Entrada núm. 209.

pensión alimentaria regular y no al plan de pago. Sostuvo que el procedimiento de cobro de deuda era uno que no estaba cobijado por el Reglamento Núm. 9535-2024. Asimismo, explicó que si una persona tenía fijada la pensión alimentaria máxima —para proteger su reserva— y acumulaba una deuda, por definición, cualquier plan de pago que se le impusiera afectaría la reserva. Por tanto, razonó que si se pretendía proteger la reserva no se podía fijar cantidad alguna por concepto de plan de pago y la deuda sería incobrable.

Por consiguiente, el Tribunal resolvió que no le asistía la razón al progenitor. Así pues, reiteró el plan de pago de $291.94 mensuales por el término de treinta seis (36) meses. Por otra parte, indicó que el plan de pago propuesto por el peticionario era irrazonable, toda vez que pagar $95.53 mensuales tomaría un periodo de nueve (9) años para saldar dicha deuda.

Aún inconforme, el 14 de agosto de 2025, el peticionario acudió ante esta Curia mediante el recurso de epígrafe imputándole al foro recurrido haber incurrido en el siguiente error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL IMPONER UN PLAN DE PAGO DEL RETROACTIVO CON UNA MENSUALIDAD QUE AFECTA LA RESERVA MÍNIMA RECONOCIDA POR LEY AL PROGENITOR NO CUSTODIO.

El 19 de agosto de 2025 emitimos una *Resolución* concediendo a la parte recurrida hasta el 25 de agosto de 2025 para expresarse. Ese mismo día, la parte solicitó prórroga para presentar su escrito y le fue concedida hasta el 5 de septiembre. Conforme a lo ordenado, el 5 de septiembre, la parte recurrida presentó su oposición al recurso. Así, nos damos por cumplidos y, a su vez, decretamos perfeccionado el recurso.

Analizados las comparecencias de las partes y el expediente apelativo, así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**Auto de *Certiorari***

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders at al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334-335 (2005). Para poder ejercer sabiamente nuestra facultad discrecional en la consideración de los asuntos planteados mediante dicho recurso, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 62-63, 215 DPR __ (2025), dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Estos criterios sirven de guía para poder determinar, de manera sabia y prudente, si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra el caso. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). Es decir, que el examen

que emplea el foro apelativo no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG, supra,* a la pág. 176.

De otra parte, el ejercicio de las facultades del Tribunal de Primera Instancia merece nuestra deferencia, por tanto, solo intervendremos con el ejercicio de dicha discreción en aquellas instancias que se demuestre que el foro recurrido: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción; o (3) se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo. *BBPR v. SLG Gómez-López,* 213 DPR 314, 334-335 (2023); *Ramos v. Wal-Mart,* 165 DPR 510, 523 (2006); *Rivera Durán v. Banco Popular de Puerto Rico,* 152 DPR 140, 155 (2000).

**Guías Mandatorias para Computar Pensiones Alimentarias**

La obligación de los progenitores de brindar alimentos a sus hijos e hijas menores de edad no emancipados es parte esencial del derecho a la vida consagrado en las Secciones 1 y 7 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico. *McConnell v. Palau,* 161 DPR 734, 745 (2004). Este deber está regulado estatutariamente en varios artículos del Código Civil y en la Ley núm. 5 de 30 de diciembre de 1986, según enmendada intitulada *Ley Orgánica de la Administración Para el Sustento de Menores,* (Ley núm. 5), 8 LPRA sec. 501 *et seq.* Esta última, mandata al Administrador de la Administración para el Sustento de Menores, en consulta con el Director Administrativo de la Oficina de la Administración de los Tribunales, a preparar y adoptar unas guías para determinar y modificar las pensiones alimentarias para menores de edad. Artículo 19, 8 LPRA sec. 518.

En cumplimiento con dicho mandato, el 15 de febrero de 2024, se aprobó el Reglamento Núm. 9535 también conocido como las *Guías Mandatorias para Computar las Pensiones Alimentarias en*

*Puerto Rico*, (Reglamento Núm. 9535 o Guías Mandatorias). Por medio de estas, se establecen los parámetros objetivos indispensables para determinar la cuantía de las pensiones alimentarias, sin obviar el binomio básico "necesidad recursos" que impone el Código Civil. *Guadalupe Viera v. Morell*, 115 DPR 4, 14 (1983).

En lo pertinente, el Artículo 14 de las Guías Mandatarias disponen las instrucciones para el cómputo de la reserva de ingresos y el ingreso neto de reserva. Particularmente dicho artículo indica lo siguiente:

> Instrucciones para el cómputo de la reserva de ingresos y el ingreso neto de reserva
>
> El cálculo de la pensión básica se establecerá conforme con los siguientes dos pasos:
>
> 1. Cálculo de la reserva de ingresos; y
> 2. Cálculo de la pensión alimentaria
>
> [...]
>
> c) En caso de que la reserva de ingresos calculada sea menor a $615 mensuales, se asignará la reserva de ingresos de $615.00. Guía Mandatorias, a la pág. 18-19.

Respecto a la reserva de ingresos para la persona no custodia, el Artículo 21 de las Guías Mandatorias expone lo siguiente:

> 1. La persona no custodia obligada al pago de una pensión alimentaria podrá conservar una reserva de ingresos, según el procedimiento establecido en el Artículo 14 de este Reglamento.
>
> 2. Al momento de verificar si la persona no custodia contará con la reserva de ingresos que le corresponde según establecido en el Artículo 14 de este Reglamento, se tomará en consideración el dinero que esta recibe por concepto de ayudas gubernamentales tales como TANF y PAN, entre otras, aunque las referidas ayudas no se consideren ingresos para efectos de establecer la pensión alimentaria.
>
> 3. En aquellos casos en los que el resultado sea menor a la reserva de ingresos establecida, el juzgador podrá ajustar la pensión alimentaria en la medida en que sea necesario para que esta pueda conservar la referida reserva de ingresos. En los casos excepcionales en los que un alimentista tenga necesidades para garantizar su salud e integridad física y emocional, que puedan verse afectadas con una reducción en la pensión alimentaria, el juzgador evaluará la situación y determinará la proporción, si alguna, en la que debe ser

reducida la reserva de ingresos. Para ello, deberá tomar en consideración los factores siguientes:

a) la naturaleza y la urgencia de la necesidad;

b) si la necesidad se contempló al considerar y computar los gastos suplementarios extraordinarios al momento de establecer o modificar la pensión alimentaria;

c) las ayudas que el alimentista tiene derecho a percibir por legislación o reglamentación estatal o federal y que, efectivamente este reciba; y
d) las circunstancias particulares de la persona custodia y las de la persona no custodia.

A pesar de lo dispuesto en el inciso (3) de este Artículo, en ningún caso en los que se esté determinando una pensión alimentaria para uno o más alimentistas, la pensión alimentaria podrá ser menor a la pensión alimentaria mínima que se le debe ordenar a la persona no custodia proveer al amparo de lo dispuesto en el Artículo 20 de este Reglamento. Como excepción, sólo se podrá establecer una pensión alimentaria menor a la pensión alimentaria mínima cuando el juzgador determine que existe justa causa para ello. En esos casos, el juzgador deberá expresar por escrito la justa causa para fijar una pensión alimentaria menor a la pensión alimentaria mínima y determinará la pensión alimentaria luego de considerar los factores siguientes:

a) los recursos económicos de la persona custodia, los de la persona no custodia y los del alimentista;

b) la salud física y emocional del alimentista, y sus necesidades y aptitudes educacionales o vocacionales;

c) el nivel de vida que hubiera disfrutado el alimentista si la familia hubiera permanecido unida;

d) las consecuencias contributivas para las partes, cuando ello sea práctico y pertinente; y

e) las contribuciones de cada persona al cuidado y bienestar del alimentista. Guías Mandatorias, a las págs. 32-34.

### III.

En esencia, el peticionario señaló que el TPI erró al imponer un plan de pago del retroactivo con una mensualidad que afecta la reserva mínima por ley al progenitor no custodio.

Según reseñamos, todo recurso de *certiorari* presentado ante este foro intermedio deberá ser examinado al palio de la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra.* De una lectura de la referida norma, surge que nuestro ordenamiento jurídico procesal no nos confiere autoridad para expedir un recurso de *certiorari* y

revisar el dictamen aquí recurrido. Esto, debido a que no se encuentran presente los criterios anteriormente enumerados, por lo que no procede nuestra intervención.

Como reseñamos en el tracto procesal, y expresó el TPI en su *Resolución,* las Guías Mandatorias permiten ajustar la pensión alimentaria en circunstancias excepcionales con el propósito de mantener la reserva de $615 del alimentante. Sin embargo, no proveen un mecanismo para ajustar el pago de una deuda retroactiva para preservar la reserva de $615.

A su vez, debemos enfatizar que luego de dictar *Sentencia* el 6 de mayo de 2024, el foro primario concedió varias prórrogas al peticionario a los fines de que expresara su posición respecto a la deuda de retroactivo. Sin embargo, este no lo hizo. Tampoco presentó justa causa por la cual no presentó su posición respecto a dicha deuda. Así pues, demostró dejadez en atender las órdenes del Tribunal. Nótese que, no fue hasta el 25 de mayo de 2025, un año después de emitida la *Sentencia* final, que este presentó una moción alegando que la deuda retroactiva afectaba su reserva.

En fin, examinada la determinación recurrida a la luz de las disposiciones de la Regla 40 de nuestro Reglamento, *supra,* entendemos que no procede nuestra intervención con la misma. Recalcamos, además que, ante la ausencia de prejuicio, parcialidad o error en la aplicación de una norma jurídica, estamos impedidos de variar el dictamen cuya revisión se nos solicita. Tampoco quedó demostrado que nuestra intervención, en esta etapa de los procedimientos, evitaría un fracaso de la justicia.

**IV.**

Por los fundamentos antes expuestos, denegamos la expedición del recurso de *certiorari* solicitado.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones